IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Andrew Washington, ) | |
| ) | C/A No. 3:06-2824-MBS |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **OPINION AND ORDER** |
| Garden State Life Insurance Company, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Plaintiff Andrew Washington brought this action for breach of contract and bad faith failure to pay benefits in the Court of Common Pleas for Richland County, South Carolina, on September 8, 2006. Defendant Garden State Life Insurance Company removed the case on October 10, 2006, on the basis of diversity jurisdiction. The matter is before the court on Defendant's motion for summary judgment (Entry 24), which motion was filed May 17, 2007. Plaintiff filed a memorandum in opposition on June 4, 2006, to which Defendant filed a reply on June 7, 2007. The court held a hearing on August 8, 2007. The court concludes that Defendant's motion for summary judgment should be granted.

I. FACTS

On March 5, 1994, Damon Washington (the "Decedent") tested positive for the Human Immunodeficiency Virus ("HIV"). Defendant's Motion for Summary Judgment, Exhibit A (Entry 24-3). The Decedent was referred to William H. Babcock, M.D., a hematologist/oncologist, for evaluation of HIV positivity. On April 21, 1994, Dr. Babcock assessed HIV positivity and proceeded with a baseline study. The Decedent was seen by Dr. Babcock on April 29, 1994 and May 5, 1994. On June 22, 1994, the Decedent presented for a follow-up of his HIV positivity. Dr. Babcock noted that he would "continue to follow for any manifestations of HIV disease." Id.,

Exhibit B (Entry 24-4).

Decedent saw Dr. Babcock again until January 6, 2000 for follow-up of his HIV positivity. Dr. Babcock noted that the Decedent had not been seen in six years and had not had any laboratory studies checked in years. Id. On June 29, 2000, the Decedent again was seen by Dr. Babcock for follow-up of his HIV positivity. At that time, the Decedent refused antiretroviral therapy. Id.

On January 15, 2001, the Decedent submitted for Defendant's consideration an application for term life insurance in the amount of $100,000. On the application, the Decedent denied having "ever been diagnosed by a person licensed as a medical doctor as having Acquired Immune Deficiency Syndrome (AIDS) or [ever having] positive test results for the AIDS virus[.]" Id., Exhibit F (Entry 24-8). Defendant thereafter issued Policy No. 005402962 in the face amount of $100,000 (the "Policy") with an effective date of February 10, 2001. Plaintiff, father of the Decedent, was sole beneficiary under the Policy. Id., Exhibit G (Entry 24-9).

The Decedent presented again for follow-up of his HIV positivity on May 11, 2001. Dr. Babcock noted that the Decedent had not been seen in approximately one year and that, depending on laboratory results, he should be started on antiretroviral therapy, "which the patient [was] very reluctant to do." Id. Accordingly, tests were ordered that again confirmed the presence of HIV in the Decedent. The Decedent once again saw Dr. Babcock on October 31, 2001 for follow up of his previous HIV positivity. Dr. Babcock advised the Decedent that he needed to be evaluated for antiretroviral therapy. Id., Exhibit D (Entry 24-6). There are no additional medical records in evidence with respect to the Decedent's treatment, if any, for HIV positivity.

The Policy lapsed for non-payment of premiums on or about August 10, 2005. The Decedent filed an application for reinstatement on December 12, 2005. Pertinent to the within litigation, the Decedent answered "no" to the following questions:

2

> Since this policy was issued (but within the past 5 years), have you . . .
>
> 1.  Consulted a physician for, been diagnosed with or received treatment for any physical impairment, sickness, surgery, mental disorder, injury, or drug or alcohol abuse?
>
>     . . . .
>
> 3.  Been diagnosed by a person licensed as a medical doctor [as] having Acquired Immune Deficiency Syndrome (AIDS) or had positive test results for the AIDS virus?

Id., Exhibit H (Entry 24-10). The Policy was reinstated effective December 21, 2005. Id., Exhibit I (Entry 24-11).

The Decedent died on May 24, 2006. His final diagnoses were pneumococcal meningitis; pneumococcal pneumonia; respiratory failure, secondary to meningitis and pneumonia; acute renal failure, secondary to meningitis; electrolyte imbalance, including hypernatremia and hyperglycemia; untreated HIV positivity, blood loss anemia, secondary to GI bleed, secondary to esophagitis and gastric ulcer; cocaine abuse; malnutrition; and multiple infarct syndrome. Id., Exhibit E (Entry 24-7). The Coroner's Report cited the cause of death as "Multiple Infarcts of the Brain and Pneumococcal Meningitis in a setting of Cocaine Abuse and Human Immunodeficiency Virus." Coroner's Report (Entry 15).

Plaintiff made a claim for benefits under the Policy. After an investigation of the Decedent's medical records, Defendant denied the claim on the grounds that the Decedent knowingly made material misrepresentations in his application for reinstatement, so that the Policy was voidable. The within action followed.

## II. DISCUSSION

Defendant has moved for summary judgment pursuant to Fed. R. Civ. P. 56. Summary judgment "shall be rendered forthwith when the pleadings, depositions, answers to interrogatories,

and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For the evidence to present a genuine issue of material fact, it must be "such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). The moving party has the burden of proving that there are no facts from which it would be open to a jury to make inferences favorable to the non-movant. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The opposing party may not rest on the mere assertions contained in the pleadings. Id. The court must view the record as a whole and in the light most favorable to the non-moving party. *Terry's Floor Fashions, Inc. v. Burlington Indus. Inc.*, 763 F.2d 604 (4th Cir. 1985).

### Law/Analysis

Defendant contends that it properly denied benefits because the Decedent made material misrepresentations on the Policy. The court agrees.

In South Carolina, an insurer may challenge the truthfulness of an application for insurance within the first two years of the policy. S.C. Code Ann. § 38-63-220(d). Reinstatement of a lapsed policy revives and restores the two-year contestability period. *Myers v. Nat'l States Ins. Co.*, 606 S.E. 2d 486 (S.C. Ct. App. 2004). In this case, the Policy was renewed within six months of the Decedent's death, within the contestability period prescribed by section 38-63-220. Accordingly, the court turns to the question of whether Defendant properly voided the Policy and denied benefits.

In order to declare a policy void and avoid liability, an insurer must show that (1) the statements complained of were untrue; (2) their falsity was known to the applicant; (3) they were material to the risk; (4) the insurer relied on the statements; and (5) the statements were made with

4

the intent to deceive and defraud the insurer. *Carroll v. Jackson Nat'l Life Ins. Co.*, 414 S.E.2d 777, 777-78 (S.C. 1992) (citing cases). If the insurer is able to prove all five elements within the contestability period, then the policy is void. Id. at 778. When the insured dies within the contestability period of a life insurance policy, the insurer is not required to prove a causal connection between the death and the material misrepresentations by the insured in the application of insurance. Id.

The court finds that the Decedent made false representations on the application for reinstatement of the Policy. The Decedent represented on the application that he had not tested positive for the AIDS virus, or had not consulted a physician for treatment for a "sickness" within the previous five years. The Decedent was aware of the falsity of the representations because he had been aware since at least 1994 that he was HIV positive. Moreover, the diagnosis was confirmed by Dr. Babcock within the five year period prior to the application for reinstatement. The representations were material to the risk and relied upon by Defendant because Defendant would not have insured the Decedent had it known of his HIV positivity. Defendant's Motion for Summary Judgment, Exhibits J (Affidavit of Judy Hughes, Entry 24-12), and K (Affidavit of Scott Luchesi, Entry 24-13).

The Decedent's intent in making the false statements is not easily discernable. In *Arnold v. Life Ins. Co.*, 83 S.E.2d 553, 557 (S.C. 1954), the South Carolina Supreme Court noted that:

> the good faith of the insured is a vital consideration and ordinarily whether a misstatement of fact in the application was made with the intent to deceive and defraud the insurer is a question for determination by the jury. However, where the only reasonable inference warranted by the evidence is that the policy was procured by fraudulent misrepresentations, the Court is warranted in directing a verdict.

In this case, the Decedent knew he had consulted a physician and knew that he had tested positive for HIV. The court concludes that the only reasonable inference is that the Decedent

knowingly made a false statement for the purpose of deceiving Defendant so that he could procure the Policy.[1]

### III. CONCLUSION

For the reasons stated herein and at the hearing, Defendant's motion for summary judgment is **granted**.

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour
United States District Judge

Columbia, South Carolina

August 15, 2007.

---

[1] Plaintiff contends that the Decedent's awareness he was HIV positive does not demonstrate an awareness that he had the AIDS virus. In the court's view, no reasonable person who had been identified as HIV positive since 1994 would be unaware that the terms "HIV" and "the AIDS virus" have been used interchangeably. *See*, *e.g.,* MedlinePlus (HIV "called also *AIDS virus, human immunodeficiency virus"),* available at http://www.nlm.nih.gov/medlineplus/mplusdictionary.html.